In the Matter of Dennis J. COOPER and Wendalyn R. Cooper, Debtors.

Wendalyn R. Cooper, Plaintiff,

v.

Educational Credit,[1] Defendant.

Wendalyn R. Cooper, Plaintiff,

v.

U.S. Department of Education, Defendant.

Bankruptcy No. 98–54012 RFH.

Adversary Nos. 01–5044, 01–5055.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Feb. 14, 2002.

defendant, which is Educational Credit Management Corporation.

Franklin D. Hayes, Douglas, GA, for Wendalyn R. Cooper.

Thomas W. Joyce, Macon, GA, for Educational Credit Management Corporation.

Bernard Snell, Macon, GA, for United States Department of Education.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Wendalyn R. Cooper, Plaintiff, filed on April 5, 2001, a complaint to determine the dischargeability of debt. Educational Credit Management Corporation, Defendant, filed a response on April 24, 2001.

Plaintiff filed on May 11, 2001, a second complaint to determine the dischargeability of debt. The U.S. Department of Education, Defendant, filed a response on June 18, 2001.

A joint trial on Plaintiff's complaints was held on December 10, 2001. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Plaintiff attended Mercer University[2] from September of 1991 until May of 1995. Plaintiff received a bachelor's degree in education. Plaintiff financed her education by obtaining a number of student loans.

Plaintiff has been employed as a teacher in Georgia's public schools since she graduated from Mercer University. Plaintiff's income from teaching has been as follows:

| School System | School Term[3] | Annual Salary |
| --- | --- | --- |
| Coffee County | 1995–96 | $22,055 |
| Coffee County | 1996–97 | 24,056 |
| Coffee County | 1997–98 | 26,236 |
| Coffee County | 1998–99 | 28,612 |
| Coffee County | 1999–2000 | 30,921 |
| Ben Hill County | 2000–01 | 32,695 |
| Camden County | 2001–02 | 37,000 [4] |

2. Mercer University is a private university located in Macon, Georgia.

3. The term of Plaintiff's employment contracts began in July or August and ended in May or June.

4. Plaintiff testified that her salary for the current school term is $36,000 to $37,000. Plaintiff would receive about an additional $2,000 if she teaches during the summer of 2002.

Plaintiff taught summer school each year except during the summer of 2001. Plaintiff received additional income of some $2,000 to $2,500 each year for teaching summer school.

Plaintiff testified that teachers receive "step" raises each year for the first five years. Then teachers receive step raises every two years. After fifteen years, teachers receive no further step raises. Plaintiff testified that she is in step eight and will receive a step raise every two years until her fifteenth year of teaching. Plaintiff testified that her salary will "max out" at about $40,000 after she has taught for fifteen years. Plaintiff's salary would increase if she obtains a master's degree.

Plaintiff filed joint tax returns with her former husband, Dennis J. Cooper. Plaintiff and Mr. Cooper reported their adjusted gross income on their federal income tax returns as follows:

| Year | Adjusted Gross Income |
| --- | --- |
| 1996 | $66,448 |
| 1997[5] | ---------- |
| 1998 | 76,892 |
| 1999 | 75,749 |

Plaintiff requested and received a forbearance of her student loans from January 21, 1997, until November 21, 1997. Plaintiff's request for a further forbearance was denied on March 31, 1998.

Plaintiff and Mr. Cooper filed a joint petition under Chapter 13 of the Bankruptcy Code on September 18, 1998. The Court entered an order on May 3, 1999, confirming the Chapter 13 plan of Plaintiff and Mr. Cooper. The Chapter 13 case of Plaintiff and Mr. Cooper was converted to a Chapter 7 case on February 9, 2001. The Court entered an order on June 1, 2001, discharging Plaintiff and Mr. Cooper from their dischargeable obligations.

Plaintiff and Mr. Cooper had marital problems and divorced. Plaintiff testified that after the divorce, her three children lived with her in Fitzgerald, Georgia. Mr. Cooper was obligated to pay child support of $333 per month for each child.

Plaintiff's children are now sixteen, seventeen, and nineteen years old. Plaintiff testified that only the sixteen-year-old child currently lives with her. Plaintiff currently receives child support of $333 per month.

Plaintiff's seventeen-year-old child lives with his father, Mr. Cooper, in Fitzgerald. Plaintiff's nineteen-year-old child does not live with either Plaintiff or Mr. Cooper.

Plaintiff married Rodney Cordell on September 8, 2001. Plaintiff and her sixteen-year-old child moved to Mr. Cordell's residence in Fernandina, Florida. Plaintiff commutes about eighty miles per day to teach in Kingsland, Camden County, Georgia.

Plaintiff testified that her car has high mileage (90,000 miles) and will need to be replaced when it is "paid off" in May of 2003. Plaintiff's car payments are $350 per month. Plaintiff testified that her sixteen-year-old child may move to his father's residence in Fitzgerald in the summer of 2002. Plaintiff testified that she will no longer receive child support if her child moves to Fitzgerald.

Plaintiff testified that teachers earn less in Florida than in Georgia. Plaintiff testified that she would make about $31,000 if she taught school in Florida.

Plaintiff testified that her husband, Mr. Cordell, has serious health problems. He suffers from diabetes, kidney failure, and liver disease and needs a liver transplant. Mr. Cordell will be unable to work for an indefinite period of time. Plaintiff knew of

---

5. Plaintiff's 1997 tax return is not in evidence.

Mr. Cordell's health problems when they married.

Plaintiff testified that her current monthly income is $3,105 from teaching and that she receives a monthly child support payment of $333. Plaintiff's net monthly income, including child support, is $2,473. Plaintiff's monthly expenses total $2,389.

Plaintiff's student loans first became due less than seven years prior to Plaintiff's filing for bankruptcy relief. Plaintiff testified that she never made any payments on her student loans [6]. Plaintiff's student loan obligations to Educational Credit total $57,730.73. Plaintiff's student loan obligations to the U.S. Department of Education total $7,670.67.

Both Defendants offer a number of repayment plans. Educational Credit offers payment plans with monthly payments ranging from $285.83 to $668.51. The U.S. Department of Education offers payment plans with monthly payments ranging from $46.50 to $88.72.

Plaintiff is forty years old and in good health. Plaintiff has a hysterectomy operation scheduled for June of 2002.

### CONCLUSIONS OF LAW

■ Plaintiff contends that repayment of her student loans would be an "undue hardship." Plaintiff relies upon section 523(a)(8)(B) of the Bankruptcy Code,[7] which, when Plaintiff filed for bankruptcy relief, provided as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

. . . .

**(B)** excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C.A. § 523(a)(8) (West 1993) (amended effective Oct. 7, 1998).

■ Plaintiff has the burden of proving that repayment of her student loans would be an undue hardship. *Rifino v. United States of America (In re Rifino),* 245 F.3d 1083, 1087–88 (9th Cir.2001); *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253, 1256 (10th Cir.1999); *United Student Aid Funds, Inc. v. Paolini (In re Paolini),* 124 F.3d 199 (table), 1997 WL 476515 (6th Cir.1997); *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 301 (3rd Cir.), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996); *In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993).

*Collier on Bankruptcy* states:

**[2]—Discharge Based on Undue Hardship; § 523(a)(8).**

. . . .

---

**6.** The record reflects that Plaintiff made some payments on her student loans through her Chapter 13 plan.

**7.** 11 U.S.C.A. § 523(a)(8)(B) (West 1993). Section 523(a)(8) was amended effective Oc- tober 7, 1998, to eliminate the "seven year" exception to nondischargeability. Plaintiff concedes that the seven-year exception is not applicable in the case at bar.

There has been a wide range of judicial reaction to the undue hardship claims of debtors. The most widely used test for evaluating the dischargeability of a student loan under section 523(a)(8) states that the debt is dischargeable if three conditions are met:

- the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans;
- there are indications that the state of affairs is likely to persist for a significant portion of the repayment period; and
- the debtor made good faith efforts to repay the loans.

The good faith inquiry is guided by the understanding that "undue hardship" encompasses a notion that the debtor's bad financial condition and default should not have been caused by the debtor's own willfulness or negligence, but rather by factors beyond the debtor's control. Therefore, if the debtor has not made payments on the loans because, through no fault of the debtor, he or she has never had the ability to pay, the good faith effort test is met.

Despite the courts' best efforts to formulate objective criteria for evaluating undue hardship, the application of the articulated standards necessarily requires each court to apply its own intuitive sense of what is a "minimal" standard of living and what is "good faith." At bottom, the Bankruptcy Code requires bankruptcy courts to decide how much personal sacrifice society expects from individuals who accepted the benefits of guaranteed student loans but who have not obtained the financial rewards they had expected to receive as a result of their educational expenditures.

4 *Collier on Bankruptcy* ¶ 523.14[2] (15th ed rev.2001).

Turning to the case at bar, the evidence shows that Plaintiff's current budget is tight. Her net monthly income, including child support, is $2,473. Her monthly expenses total $2,389. The minimum monthly payments to Educational Credit ($285.83) and the U.S. Department of Education ($46.50) would total $332.33. The Court is persuaded that it would be difficult for Plaintiff to make the minimum payments.

The evidence shows, however, that Plaintiff's state of affairs is likely to improve during the repayment period. Plaintiff will continue to receive biannual step raises until she has taught for fifteen years. Her car will be paid off in May of 2003. Plaintiff's sixteen-year-old child may move to his father's residence in the summer of 2002. Although Plaintiff would no longer receive $333 of child support, the Court notes that Plaintiff's expenses may decrease by a greater amount.

The Court also is not persuaded that Plaintiff has satisfied the "good faith inquiry." The evidence shows that Plaintiff was thirty years old, married, and had three children when she enrolled at Mercer University. The Court is persuaded that Plaintiff was a mature adult when she incurred her student loans. Plaintiff knew, or should have known, that she would incur substantial debt by attending a private university. Plaintiff knew, or should have known, the salary for public school teachers. Plaintiff knew about her current husband's health problems when they married in September of 2001. Simply stated, Plaintiff has not shown any unexpected or unusual circumstances except for her divorce. Plaintiff is in good health, and her salary has increased by $15,000 during the past six years. Plaintiff will receive several more biannual step raises. Plaintiff's family income, while married to Mr. Cooper, was $66,448 in

1996 and $76,892 in 1998. Plaintiff, however, never made any payments on her student loans.

Plaintiff has not carried her burden of proof to demonstrate that repayment of her student loans would be an undue hardship on her and her dependents.

An order in accordance with the memorandum opinion will be entered this date.